**Suzanne LeFRERE, Personal Representative of the Estate of Ross Paul Yates, deceased, Elaine Garner, Personal Representative of the Estate of Ross Paul Yates, deceased, Plaintiffs–Appellees,**

v.

**Jorge QUEZADA, Defendant–Appellant,**

**Baldwin County Commission, James B. Johnson, Steve Arthur, Defendants.**

No. 09–10024.

United States Court of Appeals, Eleventh Circuit.

Sept. 11, 2009.

Tracy P. Turner, Johnstone Adams, Mobile, AL, for Quezada.

Thomas E. James, Morris, Haynes & Mornsby, Birmingham, AL, for LeFrere.

Kristi Allen McDonald, McDonald & McDonald, Birmingham, AL, for Amicus Curiae.

Before CARNES and PRYOR, Circuit Judges, and DOWD,* District Judge.

CARNES, Circuit Judge:

■ Because state supreme courts are the final arbiters of state law, "when we write to a state law issue, we write in faint and disappearing ink," and "once the state supreme court speaks the effect of anything we have written vanishes like the proverbial bat in daylight, only faster." *Sultenfuss v. Snow,* 35 F.3d 1494, 1504 (11th Cir.1994) (Carnes, J., dissenting). A dozen years ago we held that under Alabama law jailers are entitled to absolute immunity against state law claims. *Lancaster v. Monroe County,* 116 F.3d 1419, 1431 (11th Cir.1997). This appeal presents the question of whether the effect of what we wrote in *Lancaster* has vanished in light of later decisions by the Alabama Supreme Court. Because the answer to that question is unclear, we will certify the important issue of Alabama constitutional law to the only Court that can authoritatively resolve it. *See Blue Cross & Blue Shield of Ala., Inc. v. Nielsen,* 116 F.3d 1406, 1413 (11th Cir.1997) ("[T]he only authoritative voice on Alabama law is the Alabama Supreme Court ....").

**I.**

Accepting for now the factual allegations in the second amended complaint and viewing them in the light most favorable to the plaintiffs, *see Chepstow Ltd. v. Hunt,* 381 F.3d 1077, 1080 (11th Cir.2004), this is what occurred.

In March 2005 Ross Paul Yates was arrested, charged with burglary and theft of property, and released on bond. On May 27, 2006 Yates was booked into the Baldwin County jail as a pre-trial detainee. On May 30 he began to show signs of alcohol withdrawal. The medical staff at the jail prescribed three doses of Librium and placed him on fifteen-minute close-observation status. After receiving his first dose of Librium, he was returned to his cell where Corrections Officer Jorge Quezada was on duty. Yates never received his scheduled second and third doses, and later that evening he became agitated. Jail personnel, including Officer Quezada, removed Yates from his cell, handcuffed his hands behind his back, and fastened him to a D-ring on a wall. The officers, including Quezada, then failed to check on Yates every fifteen minutes as the medical staff had ordered. Around 11:45 p.m. on May 30 Yates died of alcohol withdrawal.

**II.**

The plaintiffs, Yates' personal representatives, sued the Baldwin County Commission, the Baldwin County sheriff, the chief corrections officer, and Officer Quezada. The second amended complaint contains three claims against Officer Quezada in his individual capacity: one under 42 U.S.C. § 1983 for deliberate indifference to Yates' serious medical needs; one under § 1983 for cruel and unusual punishment; and one under Alabama law for negligent or wanton breach of his duties to Yates. We have supplemental jurisdiction over the state law claim. 28 U.S.C. § 1367(a); *Led-*

---

* Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

*ford v. Peeples*, 568 F.3d 1258, 1287–88 (11th Cir.2009). The contentions underlying the claims are that Officer Quezada should not have: fastened Yates to the D-ring; neglected to ensure that he received the prescribed Librium doses; failed to check on Yates for several hours; and falsified the close-observation documents to indicate that the mandated fifteen-minute checks had been done. The complaint also alleges that before this incident Officer Quezada had been reprimanded for violating jail procedures, including altering jail paperwork about the status of inmates.

Officer Quezada filed a motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss the state law claim against him. He asserted that because he was employed as a corrections officer by the Baldwin County Sheriff he was entitled to absolute immunity under Article I, § 14 of the Alabama Constitution, 1901.

In denying Officer Quezada's motion to dismiss, the district court acknowledged our decision in *Lancaster* holding that under Alabama law jailers are entitled to absolute immunity from state law claims. *See LeFrere v. Baldwin County Comm'n*, No. 1:07–cv–00661, at *2–3, 2008 WL 5071892, at *1–2 (S.D.Ala. Nov. 25, 2008). But the district court thought that Alabama immunity law had undergone "significant fundamental changes" since *Lancaster* was decided, *id.* at *3, with the result that the decision was no longer a correct statement of Alabama law. *See id.* at *4 ("Substantial, subsequent developments in Alabama law have completely invalidated, or at least substantially undermined, the legal underpinnings of the *Lancaster* decision."). The court recognized that under Alabama law both sheriffs and their deputies, who act as the "alter egos" of sheriffs, have absolute immunity against state law claims. *Id.* at *3. Officer Quezada, however, was not a sheriff's deputy but a jailer. Believing that jailers, unlike depu-ties, are not "alter egos" of sheriffs, the district court concluded that jailers are not protected by state sovereign immunity. *Id.* Accordingly, the court denied Officer Quezada's motion to dismiss the state law claim. This is his appeal.

## III.

■ District court denials of state sovereign immunity under Alabama law are immediately appealable to this Court. *Tinney v. Shores*, 77 F.3d 378, 382 (11th Cir.1996). We review *de novo* the district court's denial of a motion to dismiss based on sovereign immunity. *Id.* at 383. If the complaint contains a claim that is facially subject to an affirmative defense, that claim may be dismissed under Rule 12(b)(6). *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir.2003); *Marsh v. Butler County*, 268 F.3d 1014, 1022 (11th Cir. 2001) (en banc).

## IV.

Officer Quezada's motion to dismiss presents with clarity an important issue of Alabama law. The parties agree that under Article I, § 14 of the Alabama Constitution sheriffs and deputies are absolutely immune from lawsuits like this one. They also agree that Officer Quezada is a jailer, not a deputy. They disagree about whether Alabama's doctrine of sovereign immunity extends to jailers. If it does, Officer Quezada is immune from the plaintiffs' state law claim and the district court should have dismissed that claim under Rule 12(b)(6). *See Cottone*, 326 F.3d at 1357. If Alabama's doctrine of sovereign immunity does not extend to jailers, the district court properly denied Officer Quezada's motion to dismiss. It is a pure question of Alabama law.

■■ In addressing issues of state law, we are bound by the decisions of the state

supreme court. *See Flintkote Co. v. Dravo Corp.*, 678 F.2d 942, 945 (11th Cir.1982). " 'Only where no state court has decided the point in issue may a federal court make an educated guess as to how that state's supreme court would rule.' " *Id.* (quoting *Benante v. Allstate Ins. Co.*, 477 F.2d 553, 554 (5th Cir.1973)).

## A.

In 1997 we made an *Erie* guess about how the Alabama Supreme Court would handle the issue that is now back before us. *See Lancaster*, 116 F.3d at 1431. In the *Lancaster* case a man arrested for DUI went into alcohol withdrawal while locked up in the county jail. During a seizure he fell from his upper bunk and suffered a fatal head injury. *Id.* at 1423. His wife sued the sheriff and three jailers, bringing claims under state law and § 1983. *Id.*

Addressing the state law claims against the sheriff and his jailers, we observed that under " 'Alabama law, a claim against an Alabama sheriff in his individual capacity is barred by the doctrine of sovereign immunity.' " *Id.* at 1430 (quoting *McMillian v. Johnson*, 101 F.3d 1363, 1365 (11th Cir.1996)). We identified the source of that immunity as Article I, § 14 of the Alabama Constitution, which provides that "the State of Alabama shall never be made a defendant in any court of law or equity." *Id.* Because the office of sheriff is created in the Alabama Constitution, *see* Ala. Const. art. V, § 112, § 14 of that constitution gives a sheriff absolute immunity for actions he takes in carrying out his duties.

*Lancaster*, 116 F.3d at 1431 (citing *Oliver v. Townsend*, 534 So.2d 1038, 1044 (Ala. 1988)); *see also King v. Colbert County*, 620 So.2d 623, 625 (Ala.1993).[1]

We also considered in *Lancaster* Alabama decisions that had characterized sheriff's deputies as alter egos of the sheriff and had recognized that they were entitled to the same Article I, § 14 absolute immunity. 116 F.3d at 1431; *see also Alexander v. Hatfield*, 652 So.2d 1142, 1144 (Ala.1994) ("We have also held that deputy sheriffs are immune from suit to the same extent as sheriffs."). In *Alexander* the Alabama Supreme Court decided that "the acts of the deputy sheriff are the acts of the sheriff. The deputy sheriff is the alter ego of the sheriff." 652 So.2d at 1144 (quoting *Carr v. City of Florence*, 916 F.2d 1521, 1526 (11th Cir.1990)). Because a sheriff's deputy is "legally an extension of the sheriff," the Court held that "it is logical that those acts should enjoy the same immunity covering the sheriff's own acts." *Id.* (citations omitted).

In *Lancaster* we applied the same reasoning to jailers that the Alabama Supreme Court had applied to deputies. The similarity between jailers and deputies seemed clear to us. They both have a "close working relationship" with sheriffs under Alabama law—both are selected and hired by sheriffs and paid by county governments. *Lancaster*, 116 F.3d at 1430. And although jailers, unlike deputies, "cannot undertake every act that the sheriff c[an] perform," *id.* at 1429, they do perform a distinct subset of the sheriff's

---

1. There are exceptions to a sheriff's "absolute" immunity, but none of them applied in *Lancaster* and none apply here. *See King*, 620 So.2d at 626 (" 'A sheriff ... is immune ... from suit based on state law claims arising out of the execution of the duties of his office, except for actions brought (1) to compel him to perform his duties, (2) to compel him to perform ministerial acts, (3) to enjoin him from enforcing unconstitutional laws, (4) to enjoin him from acting in bad faith, fraudulently, beyond his authority, or under a mistaken interpretation of the law, or (5) under the Declaratory Judgment Act to seek construction of a statute if he is a necessary party for the construction of the statute.' " (quoting *Boshell v. Walker County Sheriff*, 598 So.2d 843, 844 (Ala.1992))).

duties. Jailers help carry out the sheriff's statutory duty under Ala.Code § 14–6–1 to maintain the jail and care for prisoners, and they are responsible to the sheriff for their performance of those duties. *Id.* We could find "no reasonable basis for distinguishing claims against the jailers from claims against the sheriff." *Id.* at 1431. That led us to conclude in *Lancaster* that the Alabama Supreme Court would afford jailers the same absolute immunity as deputy sheriffs. *Id.*

 Our prior panel precedent rule applies to decisions, like *Lancaster*, that address state law issues. *See Venn v. St. Paul Fire & Marine Ins. Co.*, 99 F.3d 1058, 1066 (11th Cir.1996). But "[i]f state law changes or is clarified in a way that is inconsistent with the state law premise of one of our earlier decisions, the prior panel precedent rule does not bind us to follow our earlier decision." *United States v. Johnson*, 528 F.3d 1318, 1320 (11th Cir. 2008); *see also Venn*, 99 F.3d at 1066 ("[I]f subsequent decisions of the ... [state] courts cast doubt on our interpretation of state law, a panel would be free to reinterpret state law in light of the new precedents." (quoting *Hattaway v. McMillian*, 903 F.2d 1440, 1445 n. 5 (11th Cir.1990))).

### B.

The plaintiffs contend that Alabama law has changed in a way that casts doubt on the conclusion we reached in *Lancaster*. They argue that *Ex parte Cranman*, 792 So.2d 392 (Ala.2000) (plurality opinion, adopted by a majority in *Ex parte Butts*, 775 So.2d 173 (Ala.2000)), significantly changed immunity law in Alabama and that post-*Cranman* decisions, especially *Wilson v. Manning*, 880 So.2d 1101 (Ala. 2003), and *Alabama Department of Corrections v. Thompson*, 855 So.2d 1016 (Ala. 2003), indicate that jailers are not entitled to absolute immunity.

In *Cranman* the Alabama Supreme Court addressed an immunity claim made by a doctor at the University of Alabama student health center. 792 So.2d at 396. Before *Cranman* immunity for state agents sued in their individual capacities was determined by distinguishing between "discretionary" and "ministerial" functions. State agents were immune from suit for the performance of discretionary but not ministerial functions. *Id.* at 404–05. The Court decided that discretionary-function immunity had been so broadly applied that it conflicted with Article I, § 13 of the Alabama Constitution, which promises "a remedy by due process of law" to "every person, for any injury done him." *Id.* The Court reset the parameters of state agent immunity by specifying the type of conduct for which that type of immunity would be afforded and the circumstances in which it would not be. *Id.* at 405–06. The *Cranman* adjustment reduced the scope of immunity for state agents.

 Alabama law recognizes two categories of immunity: state-agent immunity and sovereign immunity. *Id.* at 396–97. Although it redefined Alabama's state-agent immunity law, the *Cranman* decision did not address the state's law of sovereign immunity. *Ex parte Haralson*, 871 So.2d 802, 804 n. 1 (Ala.2003). Sovereign immunity, which is provided by Article I, § 14 of the Alabama Constitution, *id.* at 804, prohibits actions against the State. It is broader than state-agent immunity because it provides nearly absolute protection from state law claims. *See Patterson v. Gladwin Corp.*, 835 So.2d 137, 142 (Ala. 2002) ("The wall of immunity erected by § 14 is nearly impregnable.").

 Sheriffs, as constitutional officers, have sovereign immunity under Alabama law because actions against them are viewed as actions against the State. Deputies also have sovereign immunity be-

cause they carry out their sheriff's duties and thus are treated as constitutional officers. Both sides in this case agree that sheriffs and their deputies are not covered by the *Cranman* decision and instead retain their absolute sovereign immunity. *See also Ex parte Sumter County*, 953 So.2d 1235, 1239–40 (Ala.2006) ("This State immunity afforded sheriffs and deputies is not affected by this Court's decision on State-agent immunity in *Ex parte Cranman*."); *Haralson*, 871 So.2d at 804 n. 1. The question is whether jailers also should be treated as constitutional officers with absolute immunity. The answer matters because if jailers are not treated as constitutional officers, they are entitled to immunity only if their conduct falls within the scope of the categories set forth in *Cranman*. *See* 792 So.2d at 405. In this appeal Officer Quezada does not contend that the district court should have dismissed the complaint against him on state-agent immunity grounds under *Cranman*. He has instead staked his appeal on sovereign immunity.

**1.**

Officer Quezada and the Association of County Commissions of Alabama, as amicus curiae, point to several post-*Cranman* cases that suggest jailers have absolute immunity. One is *Ex parte Davis*, 930 So.2d 497, 500 (Ala.2005), decided five years after *Cranman*. In *Davis* the plaintiff sued a sheriff's deputy in his official and individual capacities for failing to comply with proper search and arrest procedures. *Id.* at 501. Recognizing that the key distinction between sheriffs and other state employees is that sheriffs are constitutional officers, the Alabama Supreme Court observed:

> [O]ur cases distinguish between the standards applied to those state agents or employees whose positions exist by virtue of legislative pronouncement and those who serve as the constitutional

officers of this State. We have held that State-agent immunity may bar an action against a state agent or employee under the principles announced in *Ex parte Cranman* .... However, ... a claim for monetary damages made against a constitutional officer in the officer's individual capacity is barred by State immunity whenever the acts that are the basis of the alleged liability were performed within the course and scope of the officer's employment.

*Id.* at 500–01. The Court then pointed out that "the acts of the deputy sheriff are the acts of the sheriff" because "[c]onducting searches and performing arrests fall within the statutory duties of a sheriff, and § 36–22–3(4), Ala.Code 1975, authorizes the sheriff to entrust the performance of those duties to a deputy sheriff." *Id.* at 501 (citation omitted). Accordingly, the Court reasoned, "it is logical that those acts [of a deputy] should enjoy the same immunity covering the sheriff's own acts." *Id.* (citation omitted).

The holding and reasoning about deputies in *Davis* provide support for our holding about jailers in *Lancaster*. If absolute immunity were limited to positions expressly listed in the Alabama Constitution, deputy sheriffs would not have it. The Alabama Constitution clearly provides for "*a* sheriff for each county," Ala. Const. art. V, § 112 (emphasis added), but it says nothing about deputies. Instead of taking a literal approach, the Alabama Supreme Court in *Davis* used a more functional approach. It focused on the fact that the deputy was performing "the statutory duties of a sheriff" and saw no logical reason to distinguish between sheriffs and deputies. *Davis*, 930 So.2d at 501. That same reasoning formed the foundation of our holding about jailers in *Lancaster*. *See* 116 F.3d at 1429–31.

In later decisions the Alabama Supreme Court has applied its 2005 *Davis* decision to afford absolute immunity to deputies who acted negligently or wantonly in circumstances similar to those in this case. *See Ex parte Davis,* 9 So.3d 480 (Ala.2008) (finding deputies absolutely immune when their alleged negligence kept an inmate who suffered from Graves' disease from getting her medication, causing her death); *Sumter County,* 953 So.2d at 1236–37, 1240 (finding deputies absolutely immune when their alleged negligence or wantonness in failing to check on a mentally unstable inmate gave him time to hang himself). Nothing in the reasoning of those cases suggests that the Alabama Supreme Court would draw a distinction between a deputy and a jailer when they perform identical duties at the jail.

█ Then there is this statement from a 2006 decision of the Alabama Supreme Court: "[D]eputies and jailers are likewise not county employees ... *Lancaster v. Monroe County,* 116 F.3d 1419, 1429 (11th Cir.1997). *Deputies and jailers are alter egos of the Sheriff* and are state employees." *Sumter County,* 953 So.2d at 1239 (emphasis added). We recognize that the "alter egos" language about jailers in the *Sumter County* opinion is dicta because none of the defendants in that case were jailers.[2] Although dicta is not binding, it can provide federal courts with insight into a state court's thinking. *See Bravo v. United States,* 577 F.3d 1324, 1325 (11th Cir.2009) ("State law is to be applied in the federal as well as the state courts and it is the duty of the former in every case to ascertain from *all the available data* what the state law is ...." (emphasis added) (quoting *West v. Am. Tel. & Tel. Co.,* 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed.

139 (1940))); *Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.,* 420 F.3d 1317, 1326 n. 5 (11th Cir.2005) ("[A] federal court attempting to forecast state law must consider whatever might lend it insight, including relevant state precedents, analogous decisions, considered dicta ...." (citation and quotation marks omitted)); *DiBella v. Hopkins,* 403 F.3d 102, 113 (2d Cir.2005) ("[T]he Appellate Division's statements concerning the standard of proof for falsity in New York, whether dicta or not, [i]s persuasive evidence of the views of New York's intermediate appellate courts on the matter.").

Considered together, the Alabama Supreme Court's reasoning in *Davis* and its dicta in *Sumter County* suggest that our educated guess in *Lancaster* about Alabama law was correct: jailers have absolute immunity for the same reason that sheriff's deputies do. The vista is not, however, entirely clear.

### 2.

The plaintiffs point to two recent decisions of the Alabama Supreme Court indicating that jailers fall within the scope of the *Cranman* state-agent framework instead of coming within the protection of absolute immunity provided constitutional officers and their alter egos. In *Wilson,* the Mobile County Sheriff's Department employed a nurse to care for its inmates. 880 So.2d at 1109. After an inmate failed to receive her medicine, she sued the nurse. The Court stated that the nurse's job was to carry out the sheriff's statutory duty to care for prisoners, applied the *Cranman* requirements for state-agent immunity, and concluded that the nurse was not immune. *Id.* at 1109–10.

---

**2.** As the plaintiffs point out, the statement that jailers are alter egos of the sheriff appears in the *Sumter County* opinion as part of a quoted passage from a party's brief. It was, however, quoted with approval and we will treat it as a statement of the Alabama Supreme Court.

The plaintiffs argue *Wilson* establishes that employees of the sheriff who perform the sheriff's statutory duties, as nurses and jailers do, do not get his absolute immunity. *Wilson* does not establish that. The nurse did not argue before the trial court that she was entitled to the sheriff's absolute immunity. She raised the issue belatedly on appeal. *Id.* at 1109 n. 10. The Court declined to decide whether the nurse would have been entitled to absolute immunity had she timely asked for it. *Wilson* is less a decision of the issue than a non-decision.

The other case the plaintiffs rely on is *Thompson*, 855 So.2d at 1016. In that case a prisoner escaped from a state correctional facility for youths and broke into a home. The homeowner sued the warden and two corrections officers for failing to follow proper procedures and for allowing the prisoner to escape. In addressing the corrections officers' immunity defense, the Alabama Supreme Court applied *Cranman* and found that they were not entitled to state-agent immunity. *Id.* at 1021. The Court did not even hint that the corrections officers might have been entitled to absolute immunity like sheriffs and their deputies are.

*Thompson* makes us question whether our educated guess about jailers in *Lancaster* has vanished like a bat in the post-*Cranman* daylight or, at least, is about to do so. Of course, the corrections officers in *Thompson* were employees of the state Department of Corrections, not the county sheriff. They were, however, employees of a state agency that has absolute immunity, *see id.* at 1019–20, just as jailers are employees of a sheriff who has absolute immunity. The duties of state corrections officers, such as facility maintenance and prisoner care, are similar to those of jailers, whom the sheriff appoints to help fulfill his responsibilities involving "the legal custody and charge of the jail ... and

all prisoners committed thereto." Ala. Code § 14–6–1. To make the analogy a bit closer, the alleged negligent or wanton actions of the corrections officers in *Thompson* are similar to those of Officer Quezada.

**3.**

What the cases make clear is that Alabama law on whether jailers are entitled to absolute immunity is not clear. On the one hand, deputies are hired by the sheriff, supervised by the sheriff, and help carry out the sheriff's duty under Ala.Code § 14–6–1 to run the county jail and care for prisoners. For that, the deputies are absolutely immune. *Davis*, 930 So.2d at 501. On the other hand, nurses are hired by the sheriff, supervised by the sheriff, and help carry out the sheriff's duty under Ala.Code § 14–6–19 to provide medical care to prisoners. For that, nurses may not be absolutely immune. *See Wilson*, 880 So.2d at 1109. State corrections officers, who perform essentially the same duties in state facilities that deputies do in county jails, do not have absolute immunity. *Thompson*, 855 So.2d at 1021.

The uncertain and dispositive issue of Alabama law is whether jailers, who share some similarities with deputies, jail nurses, and state corrections officers, have the benefit of the State's defense of absolute sovereign immunity. The certification procedure enables us to ask the Alabama Supreme Court to resolve this issue. Certification is "a valuable tool for promoting the interests of cooperative federalism," and it is especially appropriate in a case like this one where the decisional task involves interpreting the state constitution. *Nielsen*, 116 F.3d at 1413. For these reasons, we certify the following question to the Alabama Supreme Court:

Are jailers, like sheriffs and their deputies, absolutely immune from state

claims for money damages based on actions taken within the scope of their employment?

■ Our phrasing of the certified question is only suggestive and is not meant to restrict the Alabama Supreme Court's consideration of the matter. *See Essex Ins. Co. v. Zota*, 466 F.3d 981, 990 (11th Cir. 2006). As we have noted before:

> [T]he particular phrasing used in the certified question is not to restrict the Supreme Court's consideration of the problems involved and the issues as the Supreme Court perceives them to be in its analysis of the record certified in this case. This latitude extends to the Supreme Court's restatement of the issue or issues and the manner in which the answers are to be given, whether as a comprehensive whole or in subordinate or even contingent parts.

*Martinez v. Rodriquez*, 394 F.2d 156, 159 n. 6 (5th Cir.1968) (citations omitted).[3] The entire record on appeal in this case, along with copies of the parties' briefs and the amicus brief, is transmitted along with this certification.

QUESTION CERTIFIED.

---

**3.** In our en banc decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), we adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.